We'll hear the first case on calendar. I see counsel here. Neary v. Gruenberg. Good morning. Go right ahead. Thank you, Your Honor. Plaintiff appellant respectfully submits that this matter should be remanded because de novo review will be insufficient to remedy the district court's failure to abide by Rule 12d and the district court's interchangeable application of the motion to dismiss and motion for summary judgment standards throughout the decision. As this court is no doubt aware, Rule 12d states that motions that rely on matters outside the pleadings should be excluded and the motion should be treated as one for either a motion to dismiss or the party should be made aware that the district court is going to consider those matters outside the pleadings and then convert it to a motion for summary judgment. You talk a lot in your papers about how clear it is which standard the judge applied. Could you explain that a little bit? Because it's not unclear to me. Your Honor, throughout the district court's decision, at first she lays out the standard for a motion to dismiss, but then at the very conclusion of her decision, she says the summary judgment is granted. So there's a little bit of confusion as to the language, but if you read the opinion, is there really that much confusion as to which standard was applied? I would respectfully submit, Your Honor, that there is. The court clearly considers the exhibits attached to the Skinner Declaration, and then intermittently applies the motion to dismiss standard in certain cases, but then the summary judgment standard in different parts of the decision. For example, there's discussion of the appellant not satisfying the but-for causation standard in the disparate treatment claim. However, on a motion to dismiss, a plaintiff is not required to satisfy each element of a prima facie case in order to plausibly plead a claim for disparate treatment. Why doesn't de novo review just solve all those problems? Your Honor, it's respectfully submitted that de novo review would not remedy these problems because the parties were not given sufficient notice that the court was going to convert the motion to one for summary judgment. If we had been given proper notice, it's submitted that the appellant would have supplemented the record in a different way. Why don't you assume that our de novo review is going to be the motion to dismiss? I mean, we're going to apply the motion to dismiss standard. If Your Honor is going to apply the motion to dismiss standard, then it's submitted that there were other errors of law throughout the district court's decision that merited different outcome. Well, this is de novo review on the motion to dismiss, so why doesn't that wash away any problems that there may have been with the . . . In other words, in your view, is the complaint sufficiently pled to state a cause of action? Yes, it is, Your Honor. In terms of disparate impact, it's submitted that the appellant has plausibly pled a case for disparate impact that would survive rational basis review. Well, what's the basis for his asserting it? He did get his degree within two years. I mean, somebody could complain about it. Somebody who got their degree within three years could complain, but what's your client's standing to complain about that? Your Honor, the alleged or the proffered legitimate government interest in this case is that the two-year recent graduate requirement creates a more diversified workforce. However, it's difficult for the appellant to understand how a more diversified workforce also excludes a majority of applicants who . . . We don't get to whether the basis for it is rational or irrational if your client doesn't have standing to assert it. Your client met the requirement, whatever that requirement may be and however sound it may be, but your client met it. The same thing seems to be true with respect to the equal protection. I mean, in the equal protection, you're complaining about an executive order. That executive order wasn't even promulgated until after your client's candidacy was rejected. So, what's your client's standing to assert that? Even though your Honor is correct that the executive order was promulgated and signed after my client had applied and then twice denied a job with the FDIC, the two-year graduation requirement had been a requirement prior to the executive order. But he met that requirement, so it didn't filter him out because of his age. So, it's hard to understand how it's a disparate impact since he got the benefit of the very requirement that you say has a disparate impact. It didn't impact him. I mean, he was 41, wasn't he? Yes, Your Honor. But he had happened to go back to school and had recently graduated, so he would have had the benefit of it, wouldn't he? Your Honor, even though my client did meet the two-year recent grad requirement, it doesn't mean that that requirement did not favor younger recent graduates, especially considering— Well, it clearly didn't. As to him, he got through and got the benefit of the fact that he fit within that category. Disparate impact normally is that you have a series of qualifications that aren't directly related to race or to age or to sex, something like that, but have some kind of disparate impact with regard to some of those suspect—if the classification were expressed as such, such that it's just an alternate, it's a substitute for attempting to screen out those kinds of people. Here, it didn't do that to him, so I don't see how he has a disparate impact claim at all. Why don't we then go on to the issue of disparate treatment? The judge concluded that because one of the people who got one of these 54 births was 40 years old, that that meant that the disparate treatment claim was not viable because your client was just a year older. Like I briefly stated earlier, Your Honor, we submit that to plausibly plead a claim for disparate impact— not required to establish, but for causation to the standard of gross, which the district court applied in this case. In a case involving layoffs in a RIF, if you had a case involving a single hire and a 41-year-old was rejected in favor of a 40-year-old, wouldn't that categorically refute the idea that there was any age discrimination? I mean, most people can't even tell the difference between somebody who's 40 and 41. So why doesn't that apply here? May I respond? Sure, by all means. Your Honor, I think this case is somewhat unique in that the way my client became a certified, verified applicant was through a recruitment process. And since this was a motion to dismiss, we have—or appellant, at least—has no understanding of how certain candidates were chosen or vetted out. It's possible that during that process notes were taken. My client's age could have been noted. I have no way of knowing. If they hired a 40-year-old, what's the basis for thinking that a 41-year-old was rejected because he was one year older? I submit to Your Honor that even a one-year age difference could be sufficient to establish an inference of discrimination. Okay. Well, you've preserved some rebuttals, so we will hear you then. Thank you. Good morning. May it please the Court, Sharanya Mohan from the U.S. Attorney's Office for Defendant Appellee Martin J. Grunberg. This Court should affirm the District Court's dismissal of Mr. Neary's age discrimination and equal protection claims. First, the District Court properly dismissed Mr. Neary's ADEA disparate treatment claim. Even when taken as true, Neary's allegations do not plausibly suggest that the FDIC's decision not to hire him was due to his age and that age was the but-for cause of that decision. And I just want to address one point. Could you just explain that? I mean, you've just asserted it. Yes, Your Honor. The only allegation— So he said he's—he alleges he's 41. Fifty-four people were hired. They were all 40 or younger. There's a policy around that tends sharply to favor people who are in their 20s or early 30s. So why isn't there at least a viable allegation of disparate treatment? There is not a viable allegation here, Your Honor. As you observed, Mr. Neary was 41 at the time and a 40-year-old was hired. Mr. Neary alleges that a 40-year-old was hired after the recruitment events at issue. And that's really the extent of his disparate treatment claim. No, not really because there were 54 openings. So you could conceive it as his being—as his applying for 54 positions. In one of those positions, he was not hired, and a person one year younger was hired. It doesn't show anything. But how about the other 53 positions? We don't even know the ages of those people. If they were all over the age of— That would be one thing. But it looks based—a plausible reading of the complaint is that only one of the 54 was 40, and everybody else was younger. That means there's 53 instances in which he was turned down relative to somebody who was considerably younger. Well, Your Honor, there's no allegation in the complaint that everyone— every one of the 53 who was hired was significantly younger than 40 or younger than Mr. Neary. But isn't that plausible considering that the agency's own policy favored people who were within two years of getting a degree? It's not plausible for two reasons, Your Honor. First, as to that policy, as we discussed in the brief, there was no such policy in place at the time that Mr. Neary was hired. I don't understand why the district court judge even troubled herself with this thing. This is a policy that comes two years after the fact. Frankly, I think it's nuts. You have a hiring decision made in 2010, and in 2012, President Obama announces this incentive to hire recent graduates. And somehow you bootstrap that back into a policy in 2010. I mean, she did it on standing. But I don't understand how it's relevant in any way, shape, or form. We would agree with that, Your Honor. Unless it's a reiteration of a longstanding policy, which we don't know that, right? That's right. And that wasn't alleged. There are some allegations that the FBI— I read this two or three times to see if I was missing something. I thought, well, maybe I'm getting older, so maybe I'm missing something here. But I don't get it. Additionally, although the district court did not consider this, the government did actually present the district court with the job opening that Mr. Neary applied in response to, which was referenced in his complaint, and we argue could have properly been considered. Aren't we supposed to limit ourselves to the complaint here? That's exactly what your adversary says was going on here. This became sort of an improvised summary judgment. That's not what happened, Your Honor. The district court's opinion nowhere references either declaration put in by either party. I am submitting before this court that the court can consider the attachment to the government's declaration because it consists of the job posting that was specifically referenced in Mr. Neary's complaint as the source. Did the job posting express a preference for people who were within two years of getting the degree? It did not. It did not. There was no such requirement in place when Mr. Neary applied to the FDIC. So much for the disparate impact. That's what we argue. A policy that didn't apply. What is this, Wonderland? I don't get it. What are we doing here? Why did the district court even go down this road? We presented the standing argument, Your Honor. The district court decided to dismiss the . . . We should repeat her mistake? It seems to me this is just irrelevant. We would agree with that, Your Honor. I'm sorry. I don't mean to be dismissive. You've got a case and you're arguing your case, but it just seems odd to me. As to disparate treatment, we do have 54 people and it's alleged, or it's in the record, that only one of them is as old as 40. This court's decisions on motions to dismiss coming up in similar cases with similar allegations . . . This court has repeatedly affirmed dismissals of similar cases. Similar in what respect? Where you have scores of open positions and one of them is filled by somebody who was within a year? No, Your Honor. Not specifically, but this court has affirmed dismissals of cases where the only allegation was there were open positions . . . and the applicant applied for those positions, but the person who was hired or people who were hired were 40 or under. That's really all that Mr. Neary is claiming here. For that reason, we would submit that the disparate treatment claim was properly dismissed as well. The district court relied on the but-for causation prong to dismiss that claim. Was Mr. Neary required to plead at least something having to do with discriminatory intent with respect to disparate treatment and . . . his other claim? As to disparate . . . Yes, Your Honor. As to disparate treatment, yes, Mr. Neary needed to plead facts to make his claim of discrimination plausible. So, enough facts to support a minimal inference that there was discrimination that was motivating this decision. Additionally, under the ADEA, he had to plead that that discrimination was the but-for cause of the adverse decision here, which was to not hire. How is he going to know the age of the other 53 people unless he gets limited discovery? Suppose he did get limited discovery and found out that everybody who got a job was considerably under 40. Well, Your Honor, this is not part of the record, but Mr. Neary has litigated his case in the EEOC since 2009. So, information about the ages of the individuals who were hired were available. So, he obviously knew that at least one of them was 40. So, somehow he gleaned information as to one. I don't know . . . And made an assertion that none of the others were, right? That's correct, Your Honor. So, we look at that assertion. He said we deem it to be true. And the question is, is that assertion enough to plead the claim, right? That's right, Your Honor. And we would submit that it's not enough because he has not alleged anything else about any of the applicants or the people who were actually hired for this job. He did allege that he had 17 years' experience, which would be very hard for a 25-year-old to have, wouldn't it? Certainly, Your Honor, but not for a 39-year-old to have. And that's why the ages of the applicants who were successfully hired is important in order for him to allege. It is important. But we don't know what they are. All we know is what's alleged. And what's alleged is that they were all younger than 40. That's correct. And the only allegation that he makes as to those people who were younger than 40 is that they were not as qualified as him. But that's based on his assumption that because he's of a certain age, he would have more experience than all of those people. Well, that does sort of correlate, doesn't it? It does if the ages of the people who were hired were significantly younger than him. Which we don't know. We don't know that, and he has not alleged that. And additionally, he hasn't alleged any facts that show that there was any discrimination directed towards him. For example, he hasn't even alleged that anybody at the FDIC knew of or suspected his age. He's not alleged that anybody made any comments to him concerning his age. I don't like old guys. That's old. That's what my kids say. Concerning his age at the time. There's simply not enough here for him to plead a plausible claim of age discrimination. I see that my time is up. Thank you very much. We'll hear rebuttal. Thank you, Your Honor. I would just like to take a moment to address the disparate treatment claim. Appellant submits that he has pled a plausible inference of discrimination based upon the 54 open positions being given to applicants who were younger than 40. Because only one open position was given to someone 40 years old, which is still younger than plaintiff. Which we submit is sufficient to possibly plead a claim for disparate treatment. One year? One year is enough under our case law? 40 and 41 are pretty close. Okay. Yes, there. Your client does know the ages. As your adversary pointed out, the proceedings in the EEOC afforded the opportunity to find out the ages. Now, either your client found them out, in which case, what are they? Or didn't bother finding them out, in which case, we're not going to do self-help. When you got this decision, did you make a motion for reconsideration, given the fact that the district court had used that summary judgment language at the end, so that you could flesh out your complaint or flesh out the factual scenario as to what the distribution of the ages were among those who had successfully been hired? No, Your Honor. We did not. That would have been a golden opportunity to give the district court a chance to correct itself and to create a record if it refused to do so, so that we would then have an answer to the questions that we've been putting to you about what the distribution was, wouldn't it? Yes, Your Honor. Of course, hindsight's always 20-20. Ms. Alfonzo, you're here today arguing this case. I see that your name isn't in the lead of the brief, so this is an experience, I take it. In any event, there was no motion, and we have no way of knowing what the distribution was. Correct, Your Honor. Thank you. Thank you. Thank you both. Thank you both very much. We'll reserve the decision.